Good morning, Your Honors. My name is Eric Slepkin. I represent Frances Garcia in a claim regarding Social Security Disability Benefits. I'd like to reserve three minutes of rebuttal time, if I may. The case that we have before you, Your Honor, has been through the process many, many times. And we're at a point where we believe the evidence not only shows disability, but we're at a point where equity requires that it end. Ms. Garcia filed her claim for Social Security Disability Benefits back in January of 2000. Well, let's just sort of cut to the chase. Well, I'm sympathetic to the procedural history of this case, and I know that it's gone back four times. But how can we conclude that a remand for an award of benefits is appropriate when there appears to be a factual issue on Step 5, whether the claimant can perform other sedentary work in the national economy? Well, first off, we don't believe that a factual issue exists as to whether she can perform any work at Step 5. There have been a plethora of restrictions and limitations assessed by every physician that has examined or treated Ms. Garcia. And we believe that those restrictions and limitations, one, would prove disability, and two, to the extent that the ALJ rejected some of those impairments or restrictions, that he did so incorrectly. All right. Well, we're reviewing this for abuse of discretion, correct? That is correct. And at Step 5, in my reading of the record, the ALJ has not made a determination whether the claimant can perform other sedentary work in the national economy. There's no explanation whether there are a sufficient number of jobs in the national economy to allow the claimant to perform jobs to qualify as sedentary work. There are approximately 200 separate unskilled sedentary occupations that claimant may be able to perform. So, you know, how do we, you know, how do you get past that? What I would suggest and what I believe the law requires is that we take a pragmatic approach. And if we look, just look at the restrictions assessed by the judge in this case. The decision that was overturned, he writes that Ms. Garcia's psychological impairments limit her to only brief, superficial, intermittent contact with coworkers and supervisors and no contact with public or customers. If you look at that, I don't care if it's assembly or anything else, if you have Ms. Garcia sitting there and she does something wrong, how does the supervisor have that conversation with her and keep it to brief, superficial, or intermittent? Well, it sounds like a factual determination. I mean, that's the, and you're asking us to do that as opposed to abuse of discretion is one of those when you're an appellant, it's not your favorite standard of review because it's kind of a tough rock to push uphill. And there's a lot of things that say if I were in the trial position that I would do differently, but I have to say that a district judge or an ALJ or any number didn't abuse their discretion. So if there are factual determinations to be made, how can that be an abuse of discretion? I mean, not to say that you're, you know, I know that your client is very weary of, you know, it appears that if something could go wrong, it does go wrong, and it just keeps going, and it's not one of those cases that you want to say, well, gosh, this is how we hope all cases go. Certainly not, but. Well, the courts have certainly taken a view where they look at certain restrictions and limitations that are assessed by a treating physician or even the claimant's subjective complaint and credited those and said, look, we don't need to do any more in-depth factual evaluation. We know if those restrictions and limitations are accepted as true, the claimant cannot perform work. And that's what we have here. If you look at these restrictions, even the ones by the judge, I mean, if a vocational consultant testifies, you know what, even with those a person can work, it's not a realistic testimony. We don't just get to say because he said it, it's true. Well, but if we do it a little bit differently, we say that let's take your description of the RFC, and we credit that as you've described it. And we assume, as you did, that the ALJ incorrectly tried to apply that. You're still back to this question of putting everything in your favor as you describe it, quote, where does that leave you? What is the substantial work? And that's a question that if you put it in the light most favorable to you, hasn't actually been answered yet. And it may well be answered quite favorably to your client. I don't know. But I don't know how it could be answered on this record. So that's where I'm having some trouble not thinking that the remand would be the way to, you know, get the answer to that question and then be done with it. Well, to say, you know, let's get some additional testimony and then be done with it, meaning in terms of we expect that a vocational consultant is going to say no work, why put Ms. Garcia through that process? Well, I don't know. You see, that's the question. You know, it's not really in the province of the court of appeals to say what a vocational expert or even what the judge might do on a remand. We can't speculate on that. No. But we can apply the law. And, you know, hypothetically, and it happened in this case, I asked the vocational consultant if there were marked restrictions in certain areas whether an individual could work, and the vocational consultant said yes. But we know at Step 3, according to the listings, such an individual wouldn't be able to work. And if the court were presented with those specific findings, even though a vocational consultant said they could work, you can't find that they can work. The listings are determinative. And we're looking at the case law here. Cruz, for instance, says when we talk about these kind of restrictions and limitations, we know an individual cannot work. Is the grid applicable in this case at all? The grids? I don't believe the grids would be applicable in this case. What's the age of your client right now? She's right now. She might be 50 right now. But during the period of time we're looking at, she was in her 40s. Okay. I believe mid to late 40s. So we are not looking at grids on this. We are looking at whether she could sustain an 8-hour day. And the ALJ did something interesting here, and they picked and chose from different reports. One of the things he credited a physician, Dr. Tuleri, who indicated that the claimant could stand and walk for 2 hours. The ALJ found that my client could sit for 5 hours. That's less than an 8-hour day. Under the ruling, a less than 8-hour day is automatically disabled. So just those type of findings alone would indicate that Ms. Garcia cannot sustain work. And we're just we just want to put it all together. You have somebody who's less than 8 hours. You have somebody who can't deal with coworkers, supervisors, public. Did a vocational expert testify to that, or did the vocational expert place her into light work instead of sedentary work? The ultimate basis for the remand was because the vocational consultant placed Ms. Garcia into a light category of work when clearly she can't perform a light category of work. And that's what the district court looked at and ruled on in sending this back. But I'm asking the court to look at this record as a whole, which I think under the law we must look at it as a whole. And anyone reading this record can ascertain that this individual cannot maintain reliability. She's emotionally unstable. And as even found by the ALJ, if she's faced with more than intermittent superficial brief contact with coworkers or supervisors, she's done. She's not going to be able to sustain that kind of work. She can't deal with the public. Her GAF at one point was 40 to 50. She's been through the ringer. She's lost her health insurance. She couldn't get to and from appointments. She lost her house while we were going through this. And that's all in the record. And the whole purpose of Social Security benefits is to stop this type of harsh reality from affecting people that are too sick to work, that are disabled. The entire purpose of the Social Security Act is for to prevent exactly what happened to Ms. Garcia. She shouldn't have to go through this. And, I mean, five hearings, four denials, four vacatures. These are not unique issues. Treating physician rule, RFC assessments. I mean, an ALJ should be able to get this right the first time, even the second time, maybe the third time. But a fifth time? And I think equity just says enough is enough. She's established that she can't perform her past work. The burden of proof is on the defendant. They've repeatedly failed to meet their burden of proof. No other litigant would be able to get five shots to meet a burden of proof. And the government should not be entitled to it in this case. Good morning, Your Honors. May it please the Court, Mary Parno for Michael J. Astry, Commissioner of Social Security. The district court did not abuse its discretion in this case. We may need it for further consideration at step five of the sequential evaluation. Well, let me, you know, this can't be a procedural history that the government is proud of from the standpoint that this is not really what we hope. We don't hope that our tax dollar is going to take, you know, okay, I've been a trial judge. We all make errors, and there are a lot of things. But, you know, why isn't enough is enough here? I mean, how many bites, you know, how many bites out of the apple does the government need to get this right? Ideally, Your Honor, it would not take this many times, admittedly. The questions in this case that required remand by the agency's appeals counsel involved a sit-stand option. Initially, at the first hearing, the ALJ didn't have a vocational expert, and he assessed that the claimant required a sit-stand option. Therefore, it was remanded for the vocational expert testimony. At the next hearing, the ALJ assigned the sit-stand option and had a vocational expert, but did not explain or clarify the amount of time the claimant would need to sit and stand alternatively. There was also a question about Dr. Ogeson, and that was really not the agency's fault. Dr. Ogeson submitted assessment forms that had his signature, but there was no indication that Dr. Ogeson had ever examined claimant. So the agency reamended for clarification of that issue. The third hearing, the ALJ again assessed the sit-stand option and required that it be at claimant's need based on pain and limitation, but the appeals counsel still found that that wasn't strict enough and it didn't clarify it enough. This remand, the ALJ found that she needed to stand 30 minutes and then sit for 60 minutes, then return to standing for 30 minutes and sit for 60 minutes and so on. So he also clarified the issue about Dr. Ogeson, which is that he did not ever examine. But it isn't rocket science when this is what you do all the time. You know, it's one thing when people, I mean, it is a very specific area of the law, and obviously it does require very specific findings, but this is what people do every day, you know, doing this. You know, you have to wonder, looking at this, is, you know, is this individual so unlikable that, you know, at every, you know, that every step of the way or that it doesn't, you know, that they, that the government's fighting every step of the way at everything, or, you know, I mean, as a trial, former trial judge, I look at this and I say, you know, what else is going on here? I mean, why can't we just get this done? Well, it also wasn't a simple record. I mean, claimant has impairments including a back impairment, a neck impairment, diabetes, knee impairments. She's a younger individual, so even if she were limited to sedentary work, it's not an automatic finding of disability. The record grew as time passed. Her mental impairment appeared to worsen, and the ALJ did assess more severe restrictions for her mental impairment. I mean, it's no surprise that there's a degradation in her condition given what is, you know, basically a football game of back and forth between the administrative agency, the district court, et cetera. I guess, did this case ever go to mediation? No, Your Honor. That's, that this court, this case never left the agency. The first time it left the agency was for Judge Holland's decision. The remands were by the agency's appeals counsel. And I would note, Your Honor, that in addition to the complications with her medical impairments, there were also step back. Did it, it never, it's not gone through the Ninth Circuit mediation program? No, Your Honor. Do you think that this is the kind of case, given the passage of time, given the severity, given the fairly clear record of what we have here, that mediation might be helpful so that her case could be brought to a close, or at least an effort might be made to be, to see if it could be brought to a close through mediation, nonbinding, of course? Your Honor, the Commissioner's position is that this case would be appropriate for remand because the vocational issue is a very specific issue, and the Commissioner's in the best position to determine that. At mediation, we would have no way to know whether there are still sedentary jobs, and that is a problem. Well, the mediator couldn't do a worse job than the government's done with this. You know, honestly, from that standpoint, I mean, I don't think that the government's in a position to take a real high road as far as that goes. But, I mean, how many lawyers have been on this case? Has it been the same, you know? Or, I mean, how many different people have touched it? Do they, you know, it seems like every time something goes back, does someone else then get involved, and then it's just? There were two different administrative law judges in this matter. And what about representatives from the agency? You know, how many lawyers have been involved in it? The agency doesn't have lawyers at the hearing level. It's the administrative judge who's the trier of fact and assesses credibility. And in this case, there were three sources that found claimant to evidence, symptoms of exaggeration and embellishment. Her own treating therapist said that she was seeking disability benefits rather than treating. Two consultative examiners found that she exaggerated her condition. So that added to the inconsistencies within the record and complicated the assessment of her medical limitations and impairments. What would occur if this is remanded? Would it go before an ALJ and then have a vocational expert say, subject to these limitations, what she can do? Yes, Your Honor. The vocational expert would be required to identify sedentary work with the claimant's specific non-exertional limitations, her mental limitations and her physical non-exertional limitations. And if there is none, then she wins, right? That's correct. So they're looking for substantial gainful employment in the sedentary or less category. Is that right? That's correct. It's a fairly narrow target. Considering her non-exertional limitations, yes, it would be. And is she worse than when she started out? Based on Dr. Tran, his assessment was that she wasn't as severely restricted as Dr. Ogison and Nurse Practitioner Butler assessed. Based on Dr. Tran's RFC assessment, the vocational expert identified jobs. However, they were not sedentary jobs. They were light jobs. If the vocational expert can't identify sedentary jobs with Dr. Tran's limitations and her other non-exertional limitations, then the claimant would be paid benefits. So that's really the question that this case has been about from the beginning. It's just that it's taken these five hearings to answer what is one straightforward question, correct? With the exception of the diminution in her mental limitations that the ALJ assigned, yes, Your Honor. Has any vocational expert put in the record at all that she could do sedentary work that's just devoid of that? That's the problem, Your Honor. There is no case. Because it already got truncated every time because the ALJs resolved it earlier, right? No. Actually, this case was resolved at step 5 every time. Well, this one, every time at step 5? Yes, Your Honor. So why is there not a vocational expert that made that determination? The Commissioner would submit that at the last hearing, the vocational expert was trying to reduce the number of sedentary jobs in the Dictionary of Occupational Titles to account for the sit-stand option. That automatically takes it out of the Dictionary of Occupational Titles. So she was testifying to her knowledge of Arizona numbers of jobs that would allow her mental impairments plus the sit-stand option as the ALJ outlined, which was 30 minutes, then 60 minutes. In that process, she identified light jobs. Based on the colloquy at the hearing, it appears that she was trying to erode the light jobs to satisfy the sit-stand option and the mental impairment, but the district court found that through the erosion it became a sedentary RFC and she needed to identify sedentary jobs. Well, you would be you're in a you don't have to contest this, right? I mean, someone could award her benefits without making her have another hearing, right? The question would have to be answered that whether or not there are sedentary jobs, some vocational specialist and or expert would need to identify whether there are sedentary jobs given all of her limitations that she can't. And so you're saying that there isn't there isn't someone that could make that determination without a hearing? I mean, don't yeah, I mean, you're representing the government on this. Not everyone has hearings on these, right? That's correct. And that's why I asked about resolution. You said, no, we have to have this finding. But, you know, thousands of cases every day, people take a look at what happened. Here's the facts. Maybe it's not 100 percent certain here or there. So they come to some resolution and the resolution, whatever it may be, does a lot of things. One, it saves the government, the taxpayers, the money of another proceeding. It saves the pain and agony for a litigant of going through what's already been a very prolonged proceeding through no fault of her own. It also precludes the possibility that there would be yet a third mistake, that somehow somebody would slice it somewhere between light, light and sedentary light or sedentary minus, and we'd be back up here again. I mean, that's within the realm of this case, that's certainly possible. So that's why people go to mediation. That's why people talk about settlement, because not everything is certain. And it's only for that reason that I suggest that the government here at least consider that option. I mean, we've not ordered something like that. But it's certainly an option for the government to consider and some cases call out for it more than others. And I would expect that if within the counsel's office there's not that authority, that there's certainly someone with that authority in the commissioner's office to make some accommodations in some cases. Other questions from the panel? Did you have anything else you wanted to add to close? Just that we believe that the district court did not abuse its discretion in remanding this case for that sole issue of whether a claimant could perform a sedentary job with her additional exertional and non-exertional limitations. Thank you, Your Honors. We have a little time for rebuttal. I'm going to make this very brief. I just want to remind the Court that the Social Security's own rules state that in order to be able to sustain work, this record clearly demonstrates she doesn't. That's another reason why it should be remanded for payment. Thank you. Thank you. Thank both counsel for your argument. Thank the commissioner. We appreciate your candor and also your passion on behalf of Ms. Garcia. And the case just argued is submitted, Garcia v. Estru. We have several cases here that have been submitted on the briefs, so we'll now turn to argument in United States v. Patia. Thank you.
judges: McKeown, Callahan, Siler